UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SUZANNE DIEHL, et al., | |
| Plaintiffs, | |
| v. | Case No. 3:23-CV-00863-CCB-SLC |
| LANDMARK RECOVERY OF CARMEL LLC, et al., | |
| Defendants. | |

## OPINION AND ORDER

Pending before the Court is a Motion to Dismiss by Defendants Landmark Recovery of Louisville, LLC, Landmark Recovery Management Company, LLC, and Landmark Recovery of Carmel, LLC d/b/a Praxis of South Bend by Landmark Recovery (collectively "Defendants"). [DE 36.] For the reasons set forth below, the Motion to Dismiss is granted in part, and denied in part.

## FACTUAL BACKGROUND

Plaintiffs Suzanne Diehl, Tylor Young, April McElroy, Marcus McElroy, Sean Benner, Joseph Underwood, Kacey Whitmer, Jered Leichy,[1] Andre Robinson, Derrick Tarver, Elliot Herron, Lewis Timothy, Drake Raines, Michael Romero, Mark White, Aaron Alexander, Mariah Patterson, Kristen Lipinski, Jordan Putz, Thomas Nelson, Nicholas Prentkowski, Walsh Poling, Zachary Cashman, Zachary Basham, Jacob Shreve, Gretchen Johnson, Travis Bates, Stephenni Endsley, Tracy Depree, and Noah Williams (collectively "Plaintiffs") were residents at Defendant Landmark Recovery of Carmel, LLC d/b/a Praxis of South Bend by Landmark Recovery ("Praxis"), a substance abuse rehabilitation facility in Mishawaka, Indiana. [DE 32 at ¶¶ 1-2.] While residing at Praxis to recover from substance abuse, Plaintiffs allege that they sustained severe personal injuries

---

[1] The Court uses the spelling of plaintiff Jered Leichy's name as it is spelled in the amended complaint, and notes that there appears to be a typographical error in the spelling of Mr. Leichy's name in the case's caption.

as a result of the unsafe and hazardous conditions at Praxis. [*Id.* at ¶¶ 18-20.] Plaintiffs further allege that Defendants provided unsanitary living conditions, ineffective plumbing, permitted human wastewater in the hallways, failed to clean vomit and defecation from Plaintiffs' rooms, and denied Plaintiffs access to a working toilet for over 24 hours. [*Id.* at ¶¶ 22-24.] Plaintiffs also allege that Defendants failed to mitigate or prevent physical altercations and sexual assaults between the residents and staff, served inadequate meals, let residents go days without food or beverage, permitted individuals to bring illicit drugs into the facility, and withheld Plaintiffs' personal belongings without access for extended periods of time. [*Id.* at ¶¶ 26-29, 45-47.] Plaintiffs' amended complaint brings four claims against Defendants: endangerment (Count I), premises liability (Count II), negligence (Count III), and punitive damages (Count IV).[2] Defendants have moved to dismiss all claims against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [DE 36.]

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and

---

[2] This case is related to the following cases, all pending before this Court: *Jillson v. Landmark Recovery of Carmel LLC*, No. 3:23-cv-01024-CCB-SLC, *Harris v. Landmark Recovery of Carmel LLC*, No. 3:23-cv-00862-CCB-SLC, and *Harber v. Landmark Recovery of Carmel LLC*, No. 3:23-cv-00840-CCB-SLC.

common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)).

## DISCUSSION

A. Praxis Moving to Dismiss

As a preliminary matter, Plaintiffs argue that Praxis cannot move to dismiss the amended complaint because Praxis answered the initial complaint rather than filing a motion to dismiss, the amended complaint only added Landmark Recovery of Louisville, LLC and Landmark Recovery Management, LLC as defendants, and the amended complaint did not change or add any new allegations as to Praxis. [DE 39 at 4-5.]  But "[w]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward," and "wipes away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (citations omitted).  Accordingly, the Court finds that Praxis may move to dismiss Plaintiffs' amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), even if Praxis answered Plaintiffs' initial complaint. *See Donald v. City of Chicago*, 539 F. Supp. 3d 912, 922 n.5 (N.D. Ill. 2021) (citations omitted).

B. Shotgun Complaint

Defendants first argue that the Court should dismiss the Plaintiffs' amended complaint outright because it is a so-called shotgun complaint. [DE 37 at 3-4.]  "A shotgun pleading is a complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *Phillips v. U.S. Equal Emp. Opportunity Comm'ns*, No. 3:15cv565, 2016 WL 3124623, at *1 (N.D. Ind. June 1, 2016) (quotations and citation omitted).  "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011).  However, "[a] district court is not authorized to dismiss a complaint

3

merely because it contains repetitious and irrelevant matter." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (internal quotations and citation omitted) ("[A] a judge should bypass the dross and get on with the case.").

While there is some repetition in Plaintiffs' amended complaint, the Court finds that it is not incoherent or confusing. *See id.* ("Some complaints are windy but understandable. Surplusage can and should be ignored."). Further, the Plaintiffs' amended complaint is unlike the complaints at issue in the two Northern District of Illinois cases cited by Defendants. In *Eberhardt v. Vill. Of Tinley Park*, No. 20 C 3269, 2020 WL 10618313, at *1 (N.D. Ill. Oct. 14, 2020), the court dismissed the complaint for being a "shotgun pleading" because the complaint, comprising of 110 pages, 675 numbered paragraphs, and 25 counts, made it "impossible to evaluate what each defendant is alleged to have done" and "inscrutable." In *CustomGuide v. CareerBuilder, LLC*, the court similarly dismissed a "shotgun" complaint that was insufficient to put the defendant on notice of the basis for the plaintiff's claims because the incorporated preceding paragraphs underlying one of its counts were not "material to the claim, or cause of action, appearing in a count's heading." 813 F. Supp. 2d 990, 1001-02 (N.D. Ill. 2011) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir. 2010)). Here, the Court does not find that the amended complaint has the same deficiencies as the complaints at issue in *Eberhardt* or *CustomGuide*. The Plaintiffs' amended complaint is only 11 pages, 60 numbered paragraphs, and 4 counts, and sufficiently puts Defendants on notice of each of Plaintiffs' claims. While each count in the amended complaint incorporates preceding paragraphs, the preceding paragraphs are generally germane to Plaintiffs' claims. Thus, the Court finds the amended complaint is not a "shotgun pleading" that warrants the Court to summarily dismiss the amended complaint.

C. Endangerment Claim

Plaintiffs assert a claim for endangerment and allege that Defendants' negligence caused Plaintiffs to be "endangered adults" as that term is defined under Ind. Code § 12-10-3-2. [DE 32 at ¶¶ 12-14; DE 39 at 7-8.] An "endangered adult" is an individual who is:

(1) at least eighteen (18) years of age;
(2) incapable by reason of mental illness, intellectual disability, dementia, habitual drunkenness, excessive use of drugs, or other physical or mental incapacity of managing or directing the management of the individual's property or providing or directing the provision of self-care; and
(3) harmed or threatened with harm as a result of (A) neglect; (B) a battery offense included in Ind. Code. 35-42-2 or (c) exploitation of the individual's personal services or property.

Ind. Code 12-10-3-2.

Plaintiffs also allege in their response in opposition to Defendants' Motion to Dismiss that "[a]ny failure of reporting by Landmark facility following the imposition of alleged deplorable conditions" is a violation of Ind. Code § 12-10-3-9, which imposes a duty on an individual who believes or has reason to believe that another individual is an endangered adult to report it.[3] [DE 39 at 8 n.6.]  Defendants argue that Plaintiffs' endangerment claim is not a recognized cause of action under Indiana law.

As an initial matter, Plaintiffs do not assert in their amended complaint or response in opposition to Defendants' Motion to Dismiss that either of Defendants' alleged violations of Ind. Code §§ 12-10-3-2 or -9 constitute negligence *per se*, nor do Plaintiffs rely on a duty arising from the statute to allege the breach element of their negligence action. *See Vale Park Animal Hosp., LLC v. Project 64, LLC*, 611 F. Supp. 3d 600, 604 (N.D. Ind. 2020) (citing *Stachowski v. Est. of Radman*, 95 N.E.3d 542, 543 (Ind. Ct. App. 2018)) (explaining distinction between negligence *per se* and private causes of action under Indiana law).  Rather, Plaintiffs argue that they are "entitled to relief under

---

[3] The Court may consider Plaintiffs' additional alleged facts in their response because they are consistent with Plaintiffs' allegations in their amended complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

5

Ind. Code § 12-10-3-2," were "plausibly endangered by the Defendants," and that their cause of action for endangerment is an "actionable tort." [DE 39 at 7-9.] The Court therefore interprets Plaintiffs' endangerment claim as premised upon a violation of a duty imposed by Ind. Code §§ 12-10-3-2 and -9 that is independently actionable, which means the Court must determine whether either section of the statute creates a private right of action. *See Vale*, 611 F. Supp. 3d at 605; *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1352 (Ind. Ct. App. 1998).

Neither party cites to a case where a court has addressed whether either Ind. Code §§ 12-10-3-2 or -9 creates a private cause of action, nor can the Court find any case where a court has addressed that question. Sitting in diversity, this Court will therefore rely on Indiana's substantive law and attempt to predict how the Indiana Supreme Court would decide this issue. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). When the Indiana Supreme Court has not ruled on an issue, decisions of the Indiana Court of Appeals control, unless there are persuasive indications that the Indiana Supreme Court would decide the issue differently. *Id.*

Under Indiana law, a private cause of action can be created explicitly or implicitly. *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005). A private cause of action is explicit when the statute provides that "persons with appropriate standing are entitled to go to court and ask for enforcement of a statute's provisions." *Id.* There is no Indiana statute that explicitly creates a private right of action for causing an individual to be an endangered adult as defined under § 12-10-3-2, or for an individual's failure to report as required under § 12-10-3-9; therefore, the Court must evaluate whether a private cause of action can be inferred. *See Doe #1 v. Indiana Dep't of Child Servs.*, 81 N.E.3d 199, 202 (Ind. 2017). Indiana courts "have long been reluctant to infer this unwritten intent, since the legislature often creates rights of action using clear language." *Id.* (internal quotations and citation omitted) (whether a statute implies a private right of action "is purely a question of legislative intent, not judicial preference"). Absent an express private right of action, Indiana courts

"usually will not infer a private right of action when the statute (1) primarily protects the public at large and (2) contains an independent enforcement mechanism." *Id.* (citations omitted).

While the Court cannot find a case where a court determined whether Ind. Code §§ 12-10-3-2 or -9 create a private cause of action, the Indiana Court of Appeals' decision in *Borne by Borne v. Nw. Allen Cnty. Sch. Corp.*, 532 N.E.2d 1196 (Ind. Ct. App. 1989) is instructive. There, the court considered whether a child-abuse victim could pursue a private cause of action against her elementary school principal for failure to make an oral report of suspected child abuse to a local child protective service unit or law enforcement agency as required under an Indiana statute. *Borne*, 532 N.E.2d at 1202. After reviewing the provisions of the act as a whole, the Indiana Court of Appeals found that the "primary thrust" of the act was to establish child protection services, procedures for handling investigations and written reports, proscribe necessary services to affected children and their families, and encourage effective reporting. *Id.* at 1203. It was also a class B misdemeanor if an individual knowingly failed to report as required under the statute. *Id.* Taken together, the *Borne* court held that there was no implied right of private action because there was "no apparent intent to authorize a civil action for failure of an individual to make the oral report that may be the means of initiating the central procedures contemplated by the act." *Id.*

The Indiana Supreme Court cited *Borne* approvingly in deciding whether an individual who reported suspected child abuse could pursue a private cause of action against the Department of Child Services for its failure to protect the reporter's identity as required under a similar child-protection statute as in *Borne*. *Doe #1*, 81 N.E. 3d at 202-203. In discussing *Borne*, the Indiana Supreme Court noted that even if the statutory duty in *Borne* "would have undeniably benefited the particular child-abuse victim," the "primary thrust" of the child protective services statute was "helping children in general." *Id.* at 203. The Indiana Supreme Court therefore held that there was no private cause of action for failure to protect the reporter's identity because the statute's scheme

7

was to help and protect Indiana's youth and only incidentally benefited reporters, and the Indiana legislature already provided an enforcement mechanism by making the failure to protect the reporter's identity a Class A infraction. *Id.* at 203-204.

Indiana caselaw supports the conclusion that the Indiana Supreme Court would find that neither Ind. Code §§ 12-10-3-2 nor -9 create an implicit private right of action. Sections 12-10-3-2 and -9 are found under Chapter 3, titled "Adult Protective Services." Similar to the child-protective services statutes at issue in *Borne* and *Doe #1*, while the sections of Chapter 3 undeniably benefit particular adult victims, the Court finds the "primary thrust" of the Adult Protective Services chapter as a whole is to help vulnerable adults in general by establishing adult protective services procedures, report requirements, and response and investigation procedures. Ind. Code §§ 12-10-3-8 through -31. Thus, since Chapter 3 primarily protects the public at large, the Court cannot infer that the Indiana legislature intended to create a private cause of action for when an individual causes another to be an "endangered adult" as defined under § 12-10-3-2, or fails to report under § 12-10-3-9. *See Doe #1*, 81 N.E.3d at 202-203; *see also Americanos v. State*, 728 N.E.2d 895, 898 (Ind. Ct. App. 2000) ("[W]hen the legislative purpose is general in nature, the mere fact that statutory language refers to a class of people does not create a private cause of action.").

The Court also cannot infer that the Indiana legislature intended Ind. Code §§ 12-10-3-2 or -9 to create a private cause of action because the Indiana legislature created an enforcement mechanism for both sections. *See Doe #1*, 81 N.E.3d at 203-204 ("When a statute expressly provides one enforcement mechanism, courts may not engraft another."). A person who exploits an endangered adult as defined under Ind. Code § 12-10-3-2 commits a Class A misdemeanor. Ind. Code §§ 35-46-1-1, -12. A person who commits battery against an endangered adult as defined under Ind. Code § 12-10-3-2 commits a Level 6 felony. Ind. Code § 35-42-2-1(e)(5). Further, a person who believes or has reason to believe an endangered adult is the victim of battery, neglect, or

8

exploitation and knowingly fails to report the facts supporting that belief to the division of disability and rehabilitative services, the division of aging, the adult protective services unit designated under Ind. Code § 12-10-3, or a law enforcement agency with jurisdiction, commits a Class B misdemeanor. Ind. Code § 35-46-1-13.

Accordingly, since the Court predicts that the Indiana Supreme Court would find that neither Ind. Code §§ 12-10-3-2 nor -9 creates a private right of action, Plaintiffs' endangerment claim must be dismissed.

### D. Premises Liability Claim

Plaintiffs allege that Defendants, as owners, operators, controllers, and/or maintainers of the premises, knew of other staff and residents who had a propensity for violence and were sexually assaulting other residents, the inadequacy of the meals served, and the lack of adequate working showers and facilities filled with human waste that prevented their use. [DE 32 at ¶¶ 21-30.] Further, Plaintiffs allege that Defendants knew or should have known that such conditions posed an unreasonable risk of harm to invitees on their premises, including Plaintiffs, and that Defendants negligently failed to warn Plaintiffs of the hazardous conditions and implement property safety and maintenance procedures. [*Id.* at ¶¶ 32-35.]

Defendants first argue that Plaintiffs do not allege a premises liability claim because Plaintiffs' alleged facts constitute activities on the land—which Defendants assert a landowner is not liable for—rather than a condition of the land. [DE 37 at 5-6.] But Defendants' argument is not supported by Indiana law.

Under Indiana's premises liability law, a landowner is liable for physical harm caused to his invitees by a condition on the land if he (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, (2) should expect that they will not discover or realize the danger, or will fail to protect

9

themselves against it, and (3) fails to exercise reasonable care to protect them against the danger. *Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 822 (7th Cir. 2019) (citing *Rogers v. Martin*, 63 N.E. 3d 316, 322 (Ind. 2016)). Further, a landowner's duty of care to invitees may also extend "due to *activities* on a landowner's premises unrelated to the premises' condition" *Rogers v. Martin*, 63 N.E. 3d 316, 324 (Ind. 2016) (emphasis in original). For activities occurring on the land, "foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances." *Id.* at 323. Thus, Defendants duty of care to Plaintiffs may extend to conditions or activities on the land. Defendants cite to *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) for its contention that premises liability does not extend to dangerous activities on the land, but *Schaefer* is inapplicable here because the court in *Schafer* was applying Illinois law, not Indiana law.

Defendants also argue that Plaintiffs fail to allege physical harm, a required element for their premises liability claim. The Court also rejects this argument. Plaintiffs allege that Defendants "failed to mitigate and/or prevent physical altercations and harm, such as but not limited to fist-fights and stabbings" and sexual assaults between residents and staff. [DE 32 at ¶¶ 26-27.] Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs plausibly allege physical harm caused by Defendants.

Accordingly, since Plaintiffs plausibly allege a premises liability claim based on the alleged dangerous conditions or activities at Praxis, the Court must deny Defendants' Motion to Dismiss the premises liability claim.

E.  Negligence Claim

Plaintiffs also assert a claim for negligence. The elements for a negligence claim are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) (citation

10

omitted).  Defendants argue that Plaintiffs have failed to state a negligence claim. However, Plaintiffs have alleged facts that are sufficient to support each of these elements, including that Defendants owed them a duty of care, and that Defendants negligently caused personal injuries while Plaintiffs were residents at Praxis. [DE 32 at ¶¶ 37-38, 44-50.]  Accordingly, Plaintiffs' negligence claim is plausible, so the Court also denies Defendants' Motion to Dismiss as to the negligence claim.

    F.  Punitive Damages Claim

Lastly, Plaintiffs allege they are entitled to punitive damages because Defendants acted with gross negligence and with wanton and reckless disregard for the Plaintiffs' health and safety. [DE 32 at ¶ 57.]  Defendants seek to dismiss Count IV of Plaintiffs' amended complaint to the extent Count IV asserts an independent cause of action for punitive damages. [DE 37 at 10-11.]

Defendants are correct that Plaintiffs cannot bring a claim for punitive damages as an independent cause of action. *See Yost v. Wabash Coll.*, 3 N.E.3d 509, 514 (Ind. 2014) ("[W]hile punitive damages has its own prerequisite elements of proof, such elements do not establish an independent cause of action. The prerequisite elements only define when punitive damages may be awarded as part of the damages to which a plaintiff may be entitled if successful under a recognized existing cause of action.") (emphasis omitted).  But Indiana law does permit punitive damages in tort actions under certain circumstances, including for when a defendant commits gross negligence and willful and wanton conduct. *See Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1069-70 (Ind. Ct. App. 2005).  Accordingly, the Court only dismisses Plaintiffs' claim for punitive damages to the extent Plaintiffs are pursuing a separate cause of action.  Plaintiffs may seek recovery for punitive damages.[4]

---

[4] As Defendants concede in their reply brief in support of their Motion to Dismiss, whether Plaintiffs are entitled to punitive damages "is a question for another day." [DE 46 at 5.]

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. [DE 36.]  The Court dismisses Plaintiffs' endangerment claim (Count I).  The Court also dismisses Plaintiffs' claim for punitive damages (Count IV) to the extent Plaintiffs assert an independent cause of action, but Plaintiffs may still pursue punitive damages.  Plaintiffs' premises liability claim (Count II) and negligence claim (Count III) may proceed.

SO ORDERED.

August 2, 2024

                   /s/*Cristal C. Brisco*
                 CRISTAL C. BRISCO, JUDGE
                 UNITED STATES DISTRICT COURT